UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARIA UVINO,

                Plaintiff,

                                9:24-CV-1460
     v.                          (GTS/PJE)

DEPUTY WYANT,

                Defendant.
_____

APPEARANCES:

MARIA UVINO
Plaintiff, pro se
366 Caniff Rd
Freehold, NY 12431

MURPHY BURNS LLP                       STEPHEN M. GROUDINE, ESQ.
Attorney for Defendants
407 Albany Shaker Road
Loundonville, NY 12211

GLENN T. SUDDABY
Senior United States District Judge

**DECISION and ORDER**

**I.    INTRODUCTION**

Pro se plaintiff Maria Uvino commenced this action by filing a complaint asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 4 ("IFP Application"). By Decision and Order entered on February 4, 2025, this Court granted plaintiff's IFP Application, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed certain of plaintiff's claims and found that her Fourth Amendment

1

excessive force claim against defendant Wyant survived sua sponte review and required a response.  Dkt. No. 9 ("February 2025 Order").

Following the completion of service, counsel for defendant Wyant filed an answer to the complaint and a Mandatory Pretrial Discovery and Scheduling Order was issued.  Dkt. No. 15 ("Answer"); Dkt. No. 16 ("Scheduling Order").  Thereafter, plaintiff filed a motion to amend the complaint, together with a proposed amended complaint.  Dkt. No. 18 ("First Motion to Amend"); Dkt. No. 18-1 ("Prop. Am. Compl.").  Defendant Wyant did not oppose the First Motion to Amend.  Dkt. No. 19.

By Decision and Order entered on July 18, 2025, the First Motion to Amend was granted in part and denied in part, and plaintiff's Fourth Amendment excessive force claim against defendant Wyant once again remained in this action.  Dkt. No. 20 ("July 2025 Order"). On July 24, 2025, counsel answered the amended complaint on behalf of defendant Wyant. Dkt. No. 22.  Roughly three weeks later, plaintiff filed a second motion to amend the operative pleading, together with a proposed second amended complaint.  Dkt. No. 23 ("Second Motion to Amend"); Dkt. No. 23-1 ("Prop. SAC").

By Decision and Order entered on October 1, 2025, the Court granted the Second Motion to Amend in part and denied it in part, ordered that the proposed second amended complaint be accepted as the operative pleading, and found that the following claims required a response: (1) plaintiff's Fourth Amendment excessive force claim against defendant Wyant; (2) plaintiff's Fourteenth Amendment medical indifference claims against defendants Greene County Officials John Doe #1 and John Doe #2; and (3) plaintiff's Fourteenth Amendment due process claim against defendant Deyo.  Dkt. No. 30 ("October 2025 Order").[1]

---

[1] In accordance with the October 2025 Order, the proposed second amended complaint was docketed as the second amended complaint.  See Dkt. No. 31 ("SAC").

Presently before the Court are the following: (1) a status report filed by counsel for defendant Wyant regarding the Greene County "Doe" defendants remaining in this action, Dkt. No. 33 ("Status Report"); (2) plaintiff's motion for partial reconsideration of the October 2025 Order, Dkt. No. 34 ("Motion for Reconsideration");[2] and (3) plaintiff's letter request to correct the last name of a dismissed defendant, Dkt. No. 41 ("Letter Request").

## II.    MOTION FOR RECONSIDERATION

### A.    Relevant Legal Standard

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). A motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

In general, motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id*.

---

[2] Plaintiff alternatively requests leave to file a third amended complaint. *See* Dkt. No. 34.

### B. October 2025 Order

The proposed second amended complaint was construed to assert the following Section 1983 claims: (1) a Fourth Amendment excessive force claim against defendant Wyant; (2) Fourteenth Amendment failure-to-intervene and medical indifference claims against defendant Drum arising out of the events associated with plaintiff's arrest; (3) Fourteenth Amendment medical indifference claims against defendants Greene County Medical Professionals John Doe #1-3 and Ulster County Medical Professionals John and Jane Doe #4-6; and (4) a Fourteenth Amendment due process claim against defendant Deyo. *See* October 2025 Order at 7-9.

Upon review, the Court granted the Second Motion to Amend to allow plaintiff to proceed with the following claims: (1) plaintiff's Fourth Amendment excessive force claim against defendant Wyant; (2) plaintiff's Fourteenth Amendment medical indifference claims against defendants John Doe #1 and John Doe #2; and (3) plaintiff's Fourteenth Amendment due process claim against defendant Deyo. *See* October 2025 Order at 7-9. The Second Motion to Amend was denied with respect to all other claims raised in the proposed second amended complaint. *Id*. at 9-18.

### C. Analysis

Plaintiff does not suggest that there has been an intervening change in the controlling law, nor has she presented new evidence which was not previously available. Rather, plaintiff requests reconsideration of the dismissed claims based on new allegations of wrongdoing that were not set forth in the proposed second amended complaint, record evidence that was not attached to the proposed second amended complaint, and an argument that the Court wrongfully imposed and relied on a heightened pleading standard in

4

dismissing plaintiff's claims against defendant Drum and certain "Doe" defendants. *See* Motion for Reconsideration at 4-5.

Insofar as plaintiff seeks reconsideration based on new allegations and record evidence, a motion for reconsideration is not the proper vehicle for presenting such information to the Court.

Insofar as plaintiff contends that the Court erred in dismissing her claim against defendant Drum because the proposed second amended complaint alleges that this official "ignored a pregnant woman's direct plea for medical care after being thrown onto her stomach" and failed to "provide prompt hospital treatment or even basic monitoring[,]" *see* Motion for Reconsideration at 5, there are at least three problems with this argument. First, plaintiff's argument overlooks the absence of allegations in the second amended complaint regarding (1) why defendant Drum was present at the scene of the alleged assault, or (2) how much time passed between when plaintiff was allegedly assaulted and when she arrived at Greene County Jail. In the absence of such allegations, the Court had no basis to plausibly infer that defendant Drum was responsible for delaying plaintiff's access to medical care in any respect.

Second, plaintiff's argument overlooks the absence of allegations in the proposed second amended complaint regarding the manner in which plaintiff was thrown to the ground, and her reaction to landing on the ground. More specifically, it is unclear from the allegations in the second amended complaint whether plaintiff landed stomach first on the ground, on her hands and knees, or contacted the ground in some other manner. In addition, the proposed second amended complaint does not allege what plaintiff specifically said to defendant Drum after she was placed in handcuffs regarding her injuries or pain. Thus, the Court had no

5

basis to plausibly infer that plaintiff was suffering from an obvious medical injury that necessitated emergency medical treatment.

Third, plaintiff's argument assumes that defendant Drum had the authority to transport plaintiff to a hospital instead of a prison, despite plaintiff's arrest, and that this official was aware that medical treatment would not be available to plaintiff at the facility where she was transported. The Court had no basis to assume such facts based on the allegations in the proposed second amended complaint, and, short of defendant Drum having this knowledge (and authority), the Court would have no reason to infer that transporting plaintiff to the jail following her arrest was based on deliberate indifference to her well-being.

In light of the foregoing, the Court concludes that its previous decision dismissing plaintiff's Section 1983 claims against defendant Drum was legally correct and did not work a manifest injustice.

Finally, insofar as plaintiff contends that the Court erred in dismissing her claims against certain "Doe" defendants because the proposed second amended complaint "clearly alleged that Ulster staff knew she miscarried, provided no treatment, and denied her access to psychological care[,]" *see* Motion for Reconsideration at 5, the argument mistakenly overlooks plaintiff's obligation to plead personal involvement in alleged wrongdoing. For the sake of clarity, the proposed second amended complaint did not include any allegations regarding plaintiff's specific interactions with defendants John Doe #3, Jane Doe #4, Jane Doe #5, and John Doe #6.

In addition, with respect to defendant John Doe #3, the proposed second amended complaint does not explain how this official should have known about plaintiff's need for an urgent procedure after her pregnancy was no longer viable, or indicate when plaintiff received

6

treatment in relation to her interaction with this official (on an unidentified date and in an unidentified manner).  Furthermore, with respect to defendants John Doe #3, Jane Doe #4, Jane Doe #5, and John Doe #6, the pleading does not include allegations regarding (1) the length of time that plaintiff was pregnant, (2) any injuries suffered by plaintiff in connection with her miscarriage, (3) any mental health treatment requested by plaintiff, or (4) any mental health decline suffered by plaintiff.  In the absence of such allegations, the Court had no reason to infer that a need for mental health treatment was obvious such that deliberate indifference could be inferred solely by the alleged failure to facilitate such treatment.

In light of the foregoing, the Court concludes that its previous decision dismissing plaintiff's Section 1983 claims against defendants John Doe #3, Jane Doe #4, Jane Doe #5, and John Doe #6 was legally correct and did not work a manifest injustice.

Accordingly, plaintiff's request for reconsideration of the October 2025 Order is denied in its entirety.

### III.   STATUS REPORT AND REQUEST FOR LEAVE TO AMEND

The October 2025 Order directed the Greene County Attorney's Office to attempt to ascertain the full names of defendants John Doe #1 and John Doe #2, identified in the second amended complaint as the Medical Professionals at Greene County Correctional Facility who evaluated plaintiff during intake on December 27, 2021, and denied his requests for medical treatment in the days that followed.  *See* October 2025 Order at 16-17.

In the Status Report, counsel for Greene County states that the county "was able to obtain a 'Substitute Jail Order' . . . that confirms that on December 28, 2021, the plaintiff was transferred to the Ulster County Jail following her arrest."  *See* Status Report at 1.  The Status Report further states that "[a]t the time of the plaintiff's arrest, the Greene County Jail

did not house female inmates and all medical care at the Jail that was provided to the male inmates was provided by a third-party contractor[,]" and the county is therefore able to "confirm that John Doe 1 and John Doe 2 were not Greene County employees." *Id*.

On October 24, 2025, the Court received a letter from plaintiff responding to the Status Report wherein she states that she "underwent intake and medical screening at Greene County Jail" overnight between December 27 and December 28, 2021, during which time she "informed both jail and medical staff that she was pregnant and in pain after being slammed on her stomach during her arrest." *See* Dkt. No. 40 at 2-3. Plaintiff further states that she "explicitly requested to be transferred to an outside hospital for evaluation and care, but her requests were ignored[,]" and she was instead "transferred within hours to Ulster County Jail because Greene County Jail has no female housing unit." *Id*. at 3.

The Status Report assumes, without any explanation, that plaintiff could not have suffered a violation of her constitutional rights because she was never housed in a cell at Greene County Jail. Setting aside the fact that this case remains at the pleading stage, it is unclear from the Status Report how long plaintiff was held at Greene County Jail, the conditions and location of her confinement during this time, the intake process for female arrestees, or whether the facility has a medical center.[3] Thus, the information provided in the Status Report is not enough for this Court to dismiss plaintiff's medical indifference claim against defendant John Doe #1 as a matter of law.

Having said that, with respect to defendant John Doe #2, plaintiff's letter response is completely inconsistent with the allegations in the second amended, which indicate that this official was "*a member of the medical staff at Greene County Jail*[,]" and "ignored plaintiff's

---

[3] These facts are also not provided in the second amended complaint. *See generally*, SAC.

repeated medical requests regarding pregnancy complications in *early January 2022*." *See* SAC at 3 (emphasis added). It now appears that defendant John Doe #2 was employed at Ulster County Jail given that plaintiff was housed there in "early January 2022."

While the Court is sympathetic to plaintiff's circumstances, this case has been pending for almost a year. In that time, plaintiff has filed three separate pleadings, each containing slightly different facts, and naming at least one new or different defendant. *Compare* Compl. *with* Am. Compl. *and* SAC. Compounding the burden placed on the Court of having to address these shifting allegations are the vagaries in these pleadings.

For example, plaintiff's latest representations to the Court, coupled with the documents provided by her in support of the Motion for Reconsideration, indicate that (1) plaintiff was transported to Greene County Jail on the night of December 27, 2021, where she remained for a matter of hours before being transferred to Ulster County Jail, (2) on December 31, 2021, plaintiff was transported to an outside medical facility for evaluation due to "pelvic pain," where she appears to have remained until January 6, 2022, (3) plaintiff was transferred back to the outside medical facility on or about January 13, 2022, and (4) plaintiff was evaluated again by a medical professional on January 19, 2022. *See* Dkt. No. 34-1; Dkt. No. 40 at 2-3. None of these facts are set forth in the second amended complaint.

Moreover, although plaintiff seeks leave to file a third amended complaint to include new "clarifying amendments" to her pleading, *see* Motion for Reconsideration at 5, the proposed new allegations once again lack any details regarding (1) how long plaintiff was held at Greene County Jail, (2) the conditions and location of her confinement during this time, (3) the intake process that she underwent at Greene County Jail, (4) a description of the Greene County official(s) with whom she spoke regarding her medical concerns, (5) the

9

intake process that she underwent at Ulster County Jail, (6) a description of the Ulster County Jail official(s) with whom she spoke regarding her medical concerns prior to her transport to an outside hospital on December 31, 2021, (7) the approximate date(s) and time(s) that plaintiff spoke with any such official(s), (8) how long plaintiff spent at the outside hospital following her transfer there on December 31, 2021, (9) the reason plaintiff was released from the hospital, (10) the treatment recommended by the medical professionals at the hospital, (11) the treatment plaintiff sought and received following her return to Ulster County Jail, if any, or (12) how and when specific officials named as defendants were aware of plaintiff's need for medical or mental health treatment.  In the absence of such allegations, the Court has no way to evaluate how, if at all, the "Doe" officials other than John Doe #1 were personally involved in depriving plaintiff of access to constitutionally adequate medical treatment following her release from the hospital. *See, e.g.*, *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."); *Ying Li v. City of New York*, No. 15-CV-1599, 2017 WL 1208422, at *6 (E.D.N.Y. Mar. 31, 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim."); *Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 493-94 (S.D.N.Y. 2014) (dismissing without prejudice excessive force claim asserted against "members of the 'Special Search Team' and 'ESU Officers'" and noting that, "[t]o the extent that [plaintiff] does not know the names of the members of the Special Search Team or ESU Officers involved, he may name 'John Doe' defendants and include as much identifying information as he has knowledge of, for the purpose of filing an amended complaint, should Little chose to do so");

*Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998))); *Wright v. Orleans Cnty.*, No. 14-CV-0622, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) (noting in a Section 1983 case that "[g]roup pleading is insufficient for purposes of Rule 8(a)(2) [of the FRCP] which requires a short and plain statement of the claim showing that the pleader is entitled to relief" (citation and quotation marks omitted)); *Holmes v. Allstate Corp.*, No. 11-CV-1543, 2012 WL 627238, at *7, *22 (S.D.N.Y. Jan. 27, 2012) ("[FRCP] 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it.").

Accordingly, rather than grant plaintiff's alternative request for leave to amend and consider the sufficiency of the "clarifying amendments[,]" the Court will afford plaintiff thirty (30) days to file a third amended complaint that addresses each of the deficiencies identified herein (and in the October 2025 Order) with respect to the Greene County and Ulster County defendants (and repeats the allegations of wrongdoing that form the basis of her surviving claims against defendants Wyant, Deyo, and John Doe #1).

Insofar as plaintiff believes that she was deprived of constitutionally adequate medical or mental health treatment by officials after returning from hospital visits, any new pleading must correct the pleading defects identified in this Decision and Order. Plaintiff is advised that she will not be afforded an opportunity to file any further amended pleadings except to the extent that she seeks to identify a "Doe" defendant by name. Plaintiff is further advised that, in the event she does not timely file a third amended complaint, her remaining claim

against defendant Greene County Official John Doe #2 will be dismissed without prejudice in accordance with this Decision and Order and Rules 4(m) and 41(b) of the Federal Rules of Civil Procedure.[4]  Any amended complaint accepted by this Court shall supersede and replace the second amended complaint in its entirety, and must therefore be a complete pleading which sets forth all of the claims that plaintiff wants this Court to consider as a basis for awarding relief herein.

## IV.   LETTER REQUEST

In light of the denial of plaintiff's request for reconsideration with respect to the dismissal of her Section 1983 claims against defendant Drum, plaintiff's Letter Request to correct the last name of this official is denied as moot.

## V.   CONCLUSION

---

[4] An action cannot proceed until the completion of service, and unidentified defendants cannot be served. Undoubtedly, it is the Court's obligation to assist with service when a pro se prisoner is proceeding in forma pauperis.  *See* Fed. R. Civ. P. 4(c)(3) (Marshals Service must be appointed to serve process when plaintiff is authorized to proceed in forma pauperis); 28 U.S.C. § 1915(d) ("[T]he officers of the court shall issue and serve all process and perform all duties in [in forma pauperis] cases."); *see also Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996) ("By granting Wright leave to pursue his § 1983 claim in forma pauperis, Magistrate Smith shifted the responsibility for serving the complaint from Wright to the court."); *Kavazanjian v. Rice*, No. 03-CV-1923, 2005 WL 1377946, at *2 (E.D.N.Y. June 6, 2005) (noting that "[f]or plaintiffs proceeding in forma pauperis . . ., the U.S. Marshal's Office—not the plaintiff—is primarily responsible for effecting service.").  However, the Court cannot do so unless and until the pro se prisoner has provided sufficient information to facilitate service.  *See Carpio v. Luther*, No. 06-CV-0857, 2009 WL 605300, at *1 (W.D.N.Y. Mar. 9, 2009) (acknowledging the Court's "obligation to assist a pro se incarcerated litigant . . . to cause the summons and complaint to be served" but noting further that "the plaintiff nonetheless retains the obligation to provide the necessary information" for this to occur). Moreover, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, in the absence of a showing of good cause, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *see also Purisima v. Astrue*, No. 12-CV-3528, 2012 WL 5519295, at *4 (S.D.N.Y. Nov. 14, 2012) ("Purisima still has not named or served any of the Doe defendants, even though Rule 4(m) of the Federal Rules of Civil Procedure required him to ensure that the Doe defendants were served by August 30, 2012 (120 days from the date he filed his Complaint) or identify good cause for his failure to do so."); *Cole v. John Wiley & Sons, Inc.*, No. 11-CV-2090, 2012 WL 3133520, at *17-18 (S.D.N.Y. Aug. 1, 2012) (noting that Rule 4(m)'s time-limit applies to "John Doe" defendants).  Rule 41(b) of the Federal Rules of Civil Procedure also provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute it, or to comply with the procedural rules or orders of the court. Fed. R. Civ. P. 41(b); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962).  This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases.  *See Freeman v. Lundrigan*, No. 95-CV-1190 (RSP/RWS), 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996).

WHEREFORE, it is hereby

ORDERED that plaintiff's request for reconsideration of the October 2025 Order (Dkt. No. 34) is **DENIED** as set forth above; and it is further

ORDERED that plaintiff's alternative request for leave to file a third amended complaint is **GRANTED in part and DENIED in part** as set forth above. Plaintiff shall have thirty (30) days to file a third amended complaint in accordance with this Decision and Order; and it is further

ORDERED that if plaintiff timely files a third amended complaint, this matter be returned to the Court for further review; and it is further

ORDERED that if plaintiff fails to timely file a third amended complaint as directed above, plaintiff's Section 1983 claims against defendant John Doe #2 will be **DISMISSED without prejudice** for failure to comply with this Decision and Order, and pursuant to Rule 4(m) and 41(b) of the Federal Rules of Civil Procedure; and it is further

ORDERED that all deadlines in this case will be reset following the Court's review of plaintiff's third amended complaint, or the expiration of her deadline to file that pleading. The parties should not engage in discovery before this pleading issue is resolved; and it is further

ORDERED that plaintiff's Letter Request to correct the last name of defendant Drum (Dkt. No. 41) is **DENIED as moot**; and it is further

ORDERED that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

Dated: November 18, 2025
     Syracuse, NY

Glenn T. Suddaby
U.S. District Judge